IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00062-ZLW-KLM

DAVID MAGRUDER,

    Plaintiff,

v.

ANDREW KURITZ,
JACOB ROBERTS,
ERIC JOHNSON,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion to Dismiss Complaint** [Docket No. 18; Filed March 16, 2010] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation. The Motion has been fully briefed and is ripe for resolution. The Court has considered the Motion, Plaintiff's Response [Docket No. 21], Defendants' Reply [Docket No. 29] and the applicable case law and is sufficiently advised in the premises. For the reasons set forth below, I **RECOMMEND** that the Motion be **DENIED.**

**I. Background**

This case arises from alleged constitutional violations committed during Plaintiff's arrest by Deputies Kuritz, Roberts and Johnson of the Douglas County Sheriff's office (the "Defendants"). *Motion* [#18] at 2, 4. Plaintiff, who is proceeding *pro se*, filed this case

1

pursuant to 42 U.S.C. § 1983 against Defendants on January 12, 2010 [Docket No. 1].

The majority of the facts surrounding the alleged constitutional violations, particularly Plaintiff's purported suicide attempts, are in dispute.[1] According to Defendants, the incident began on the evening of March 30, 2009 when Plaintiff, drinking and under the influence of anti-depressants, twice attempted suicide. *Motion* [#85] at 2; *Complaint* [#1] at 3. Defendants claim that Plaintiff first attempted suicide in his garage by sitting in his idling car, with the garage door closed. *Motion* [#85] at 2. Defendants contend that Plaintiff's wife thwarted his initial suicide attempt by turning off his car and taking away his car keys. *Id.* However, according to Defendants, Plaintiff then found motorcycle keys and tried to kill himself again, in essentially the same way, with his motorcycle. *Id.* at 3. After Plaintiff's wife hindered his second attempt, Plaintiff left the house. *Id.* Then, according to Defendants' version of the facts, Plaintiff's wife called 911 because she was worried that Plaintiff might make a third suicide attempt. *Id.*[2]

As noted above, Plaintiff disputes the majority of Defendants' assertions. *See Response* [#21] at 2. Instead, Plaintiff's Complaint focuses on what Defendant Deputy

---

[1] The Court may take judicial notice of public records in a prior court proceeding without converting a motion to dismiss into one for summary judgment. *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *Powell v. Rios*, 241 Fed. Appx. 500, 501 n.1 (10th Cir. July 19, 2007) (unpublished decision). Further, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997). In this case, Plaintiff refers to the police report but it is not central to the Complaint. Also, Plaintiff disputes virtually all the facts in the police report; therefore, the Court does not consider it for purposes of this Motion. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[2] Defendants' version of the underlying facts, though they provide context to Plaintiff's Complaint, cannot be considered in ruling on the Motion to Dismiss in light of the current procedural posture of the case. *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

Kuritz ("Defendant Kuritz") supposedly knew at the time of the alleged constitutional violation.

Plaintiff claims that Defendant Kuritz arrived in his neighborhood in a patrol car, got out, and addressed Plaintiff by his first name. *Complaint* [#1] at 3. Plaintiff immediately became reluctant to comply with Defendant Kuritz's requests because Defendant Kuritz offered no explanation for how he knew Plaintiff. *Id.* Defendant Kuritz, attempting to placate Plaintiff's concerns, shined his flashlight on his badge to show Plaintiff that he was a police officer. *Id.* Next, according to Plaintiff, without provocation, Defendant Kuritz "asked [P]laintiff to drop to his knees." *Id.* at 4. According to the Complaint, "[P]laintiff refused to drop to his knees" because he was not charged with any crime. *Id.* Defendant "[K]uritz [then allegedly] threw [P]laintiff against a fence and then threw [Plaintiff] to the ground." *Id.* Plaintiff alleges that Defendant Kuritz and Defendant Deputy Roberts ("Defendant Roberts") "put their full weight on [P]laintiff as he was lying on the ground." *Id.*[3] Plaintiff further alleges that in order to arrest him, Defendant Kuritz "[w]ithout warning or justification . . . willfully and maliciously Tasered [sic] [Plaintiff] in the leg twice." *Id.* According to Plaintiff, "[a]fter detaining [P]laintiff, [Defendant] Kuritz took [Plaintiff] to Littleton Adventist Hospital." *Id.* at 5.

Based on the above allegations, Plaintiff seeks compensatory and punitive damages for excessive force pursuant to 42 U.S.C. § 1983 and the Fourth Amendment.[4] *Complaint*

---

[3] According to Plaintiff's Response, Deputy Defendant Johnson ("Defendant Johnson") was present during the incident when Defendant Roberts and Kuritz wrestled Plaintiff to the ground. *Response* [#21] at 3.

[4] The Complaint also alleges a claim for assault. *See Complaint* [#1] at 6. However, despite Plaintiff's assertions, only Plaintiff's excessive force, false arrest and false imprisonment claims can be pursued pursuant to § 1983. Specifically, "§ 1983 does not impose liability for violations of duties of care

[#1] at 6. First, Plaintiff asserts that Defendants Roberts and Kuritz used excessive force when they wrestled Plaintiff to the ground. Second, Plaintiff contends that Defendant Kuritz used excessive force when he tasered Plaintiff's leg twice. *Id.* at 4, 6. Third, Plaintiff contends that Defendants Roberts and Johnson are liable for excessive force because they did not protect Plaintiff when they witnessed Kuritz allegedly using excessive force. *Response* [#21] at 3. Finally, Plaintiff alleges that Defendant Kuritz committed both false arrest and false imprisonment by taking Plaintiff to the hospital after Defendants detained him. *Complaint* [#1] at 6.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct.

---

arising out of state tort law." *Chestra v. Sedgwick County*, 08-3214, 2008 WL 5395982, at *2, (D. Kan. Dec. 23, 2008) (citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 201-03 (1989)).

4

1937, 1949 (2009).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.*  (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

As noted earlier, in support of the Motion, Defendants attach a police report from the incident.  The police report is a matter of public record.  *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) ("This Court may take judicial notice of court documents and matters of public record.") (unpublished opinion). Generally, when matters outside the pleadings are presented, the motion must be converted to one for summary judgment and reviewed under the standard set forth in

5

Fed. R. Civ. P. 56. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215-16 (10th Cir. 2007). However, notwithstanding the usual rule, "'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1215 (quoting *Jacobsen*, 287 F.3d at 941). However, in this case, Plaintiff disputes many of the facts from the police report. *See Complaint* [#1] at 3, 4; *see also Response* [#21] at 2, 3. Therefore, as noted *supra*, it is not appropriate to consider the police report attached to Defendants' Motion.

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A. Excessive Force

Defendants Kuritz and Roberts assert that all claims against them should be dismissed because they did not use excessive force when they arrested Plaintiff. *Motion* [#18] at 4. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Graham v. Conner*, 490 U.S. 386, 394-95 (1989). A court looks to the "totality of

6

the circumstances" to determine whether the manner of arrest was reasonable. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In the Tenth Circuit, "[w]e analyze whether the force used to effectuate an arrest violates an individuals's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham*, 490 U.S. at 388). "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287-88 (10th Cir. 2008) (quoting *Marquez*, 399 F.3d at 220).

Because Defendant Roberts is only liable for excessive force if Defendant Kuritz used excessive force, *see Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996), the determinative factual inquiry is necessarily the alleged force employed by Defendant Kuritz. Accordingly, the relevant facts from Plaintiff's Complaint, as clarified by his Response, are that Defendant Kuritz recognized Plaintiff as the individual reported in a 911 call alleging that Plaintiff attempted suicide. *Motion* [#18] at 5; *Response* [#21] at 3. Further, Defendant Kuritz first attempted to communicate with Plaintiff. *Response* [#21] at 3. Plaintiff refused to speak. *Complaint* [#1] at 3. The Complaint then alleges that Defendant Kuritz threw Plaintiff against a fence and onto the ground and then Defendants Roberts and Kuritz laid on top of Plaintiff. *Id.* at 4. Immediately after that, Plaintiff claims that without justification Defendant Kuritz twice "willfully and maliciously Tasered [sic] [] Plaintiff in the leg." *Complaint* [#1] at 4. Plaintiff alleges that Defendant Roberts "failed to intervene to protect Plaintiff." *Id.*

At this stage of the litigation, the Court's analysis is limited to whether Plaintiff has

7

alleged sufficient facts to support an excessive force claim, assuming those facts which are alleged to be true. *Mobley*, 40 F.3d at 340. To determine if Defendant Kuritz used reasonable force the Court must consider if his actions, as pled by Plaintiff, were objectively reasonable. *See Scott v. Harris*, 550 U.S. 372, 381 (2007). "Reasonableness is evaluated under a totality of the circumstances approach which requires that [the Court] consider the following factors: '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (citation omitted). The Court should also consider whether the officer's own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001).

In the instant case, these factors suggest that the amount of force employed by Defendant Kuritz was not reasonable. First, Defendants have not alleged that Plaintiff committed a crime before he was arrested. *Complaint* [#1] at 3; *Motion* [#18] at 5. Second, Plaintiff's allegations that he was thrown against a fence for refusing to "drop to his knees," and despite the fact that he was not charged with a crime, suggest that Plaintiff was not a threat to Defendant Kuritz. *Complaint* [#1] at 3; *Motion* [#18] at 5.

The third factor also weighs against Defendant Kuritz because the Complaint suggests that Plaintiff was not evading arrest. In fact, the dialogue, as described in the Complaint, suggests that Plaintiff was simply trying to understand the situation. The allegations suggest that the confrontation was a result of Defendant Kuritz's actions. Finally, albeit in a conclusory fashion, Plaintiff alleges that he "made no attempt to flee, had committed no crime, and was not actively resisting arrest." *Complaint* [#1] at 4. Under

8

these circumstances, I find that the Complaint alleges sufficient facts to support an excessive force claim against Defendant Kuritz.

Plaintiff alleges that Defendant Roberts held Plaintiff down after Defendant Kuritz threw Plaintiff on the ground. *Id.* Regardless of Defendant Roberts' actual physical involvement, he may still be liable for a claim of excessive force. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). Whether an officer had a chance to intervene "is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* Plaintiff sufficiently alleges that Defendant Roberts was nearby when Defendant Kuritz allegedly used excessive force. Therefore, the claim against Defendant Roberts survives a motion to dismiss.

Defendant Johnson contends that Plaintiff's claim against him should be dismissed because Plaintiff fails to allege that Johnson personally participated in any of the alleged constitutional violations. *Motion* [#18] at 4. Specifically, Defendant Johnson argues that "Plaintiff has failed to allege any action on the part of [Defendant] Johnson, [therefore] the Complaint fails to state a claim against him and must be dismissed." *Id.* Plaintiff asserts that Defendant Johnson "claims to have been at the scene of the [§] 1983 infraction" and participated by "not defending the Plaintiff from Kuritz." *Response* [#21] at 3.

In his Complaint, Plaintiff's only allegation against Defendant Johnson is that he arrived in time to witness Defendant Kuritz allegedly use excessive force. *Response* [#21] at 3-4. A liberal reading of Plaintiff's Complaint, as supplemented by his Response, suggests that Defendant Johnson, like Defendant Roberts, "failed to intervene to protect"

9

Plaintiff. *Complaint* [#1] at 4, 5; *Response* [#21] at 3-4. On the face of Plaintiff's Complaint, he claims that Defendant Johnson was present when a fellow police officer allegedly used excessive force and that he failed to prevent it. *See Complaint* [#1] at 4. Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the Defendants' participation, control or direction. *United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir. 1994); *Whitelow v. Stanley*, 06-cv-02256, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007) (unpublished decision). Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Whether or not Defendant Johnson could have reasonably intervened to stop Defendant Kuritz is not appropriately resolved on a motion to dismiss.[5] There is insufficient factual context to determine Defendant Johnson's ability to intervene in any alleged constitutional violation. In the current procedural posture, Plaintiff sufficiently alleges that Defendant Johnson personally participated in the alleged constitutional violation.

Therefore, Plaintiff has sufficiently alleged an excessive force claim against

---

[5] Pursuant to Rule 12(b)(6) the Court must regard the factual allegations in Plaintiff's Complaint as true. *See Mobley*, 40 F.3d at 340.

Defendants.

### B. False Arrest and False Imprisonment

Plaintiff claims that Defendant Kuritz violated his Fourth Amendment right against unreasonable search and seizure by arresting Plaintiff and placing him in the Littleton Adventist Hospital against his will. *Complaint* [#1] at 5. Defendant Kurtiz asserts that no constitutional violation occurred. *Motion* [#18] at 5. For purposes of this Motion, Plaintiff's false arrest and false imprisonment claims alleged pursuant to § 1983 are considered jointly because they invoke the same Fourth Amendment right[6] to be free from unreasonable search and seizure.[7] That is "[s]ection 1983 provides a federal civil cause of action against state officials for the 'deprivation of any rights, privileges, or immunities secured by the Constitution." *Titus v. Ahlm*, 297 Fed. Appx. 796, 799 (10th Cir. Oct. 28, 2008) (citing 42 U.S.C. § 1983) (unpublished decision). "While constitutional claims for wrongful arrest, [and imprisonment,] . . . under § 1983 are analyzed in light of analogous torts, such as false arrest . . . the ultimate and indispensable element of such a claim is the deprivation of a constitutional right." *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006). "To constitute a seizure of the person, just as to constitute an arrest - the quintessential 'seizure of the person' under Fourth Amendment jurisprudence - there must be *either* the application of

---

[6] If Plaintiff had been imprisoned pursuant to legal, but wrongful process, he would have a claim pursuant to the procedural component of the Fourteenth Amendment Due Process Clause analogous to a tort claim for malicious prosecution. However, Plaintiff does not allege any facts that would constitute to a malicious prosecution claim. Therefore, both his claim for false arrest and false imprisonment are properly considered pursuant to the Fourth Amendment. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (articulating the differences between Fourth and Fourteenth Amendment claims for statute of limitation purposes).

[7] A Fourth Amendment claim against Defendants is also deemed to be a Fourteenth Amendment claim. The Fourteenth Amendment makes the Fourth Amendment's guarantee applicable to the states. *See Mapp v. Ohio*, 367 U.S. 643, 656 (1961).

11

physical force, however slight, *or*, where that is absent, submission to an officer's 'show of authority' to restrain the subject's liberty." *California v. Hodari D.*, 499 U.S. 621, 624 (1996). Importantly, "§ 1983 suits ultimately rest on the Constitution, not on state (or federal) common law." *Mondragon*, 519 F.3d at 1082.

"The Fourth Amendment is not limited to criminal cases, but applies whenever the government takes a person into custody against [his] will." *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996). For purposes of an alleged constitutional violation, "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975). For mental health arrests, as "[i]n the criminal arrest context, a Fourth Amendment seizure is reasonable [only] if it is based on probable cause." *Pino*, 75 F.3d at 1467-68. Further, Colo. Rev. Stat. § 27-10-105(1)(a)(I) provides, in relative part, that:

> When any person appears to have a mental illness and, as a result of such mental illness, appears to be an imminent danger to others or to himself or herself or appears to be gravely disabled, then a [police officer], upon probable cause and with such assistance as may be required, may take the person into custody, or cause the person to be taken into custody, and placed in a facility . . . .

As alleged in Plaintiff's Complaint, Plaintiff was simply walking down a sidewalk near his own home, threatening no one, when Defendant Kuritz tasered and arrested Plaintiff. *Complaint* [#1] at 3. The statute explicitly requires that a person appear to be mentally ill and a threat to himself or others, before he maybe "taken into custody." However, based on the allegations set forth in the Complaint, Plaintiff was not mentally ill, did not appear to be mentally ill, and was simply out for an evening stroll. The Complaint establishes no facts

12

that would allow a police officer to take Plaintiff into custody. Indeed, based on the Complaint, Defendant Kuritz had no reason to talk to Plaintiff much less arrest him and force him to enter a mental health facility. In the current procedural posture of the case, Plaintiff's arrest and alleged five hour detention, supposedly without cause, states a claim for violation of Plaintiff's Fourth Amendment right against unreasonable seizure. Plaintiff has sufficiently alleged that Defendant Kuritz violated his Fourth Amendment right against false imprisonment and false arrest.

### D. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Court's analysis of qualified immunity in the context of a 12(b)(6) motion is a two-part process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next . . . [inquiry is] whether the right was clearly established." *Id.* A court may review these factors in any order, using its discretion to determine which of the factors should be reviewed first in light of the circumstances of the case. *Pearson*

13

*v. Callahan*, 129 S.Ct. 808, 818 (2009).

As I have concluded above, at this stage Plaintiff states a tenable § 1983 claim based on the constitutional violations alleged in the Complaint.  Therefore, it is necessary to consider the second prong of the qualified immunity analysis.  *See Saucier*, 533 U.S. at 201.  Because Plaintiff has alleged constitutional violations, the Court must determine whether there is case law from this jurisdiction, the Supreme Court or the clear weight of authority that would lead Defendants to believe that their conduct was unconstitutional.  *Shroff v. Spellman*, No. 07-cv-01466, 2009 WL 222430, at *4 (D. Colo. Jan. 27, 2009) (citation omitted) (unpublished decision).  In other words, there must be case law in which a constitutional violation was found based upon similar conduct.  *See Pearson*, 129 S.Ct. at 822.

The Tenth Circuit has adopted a three-part test to determine if an officer used excessive force to effectuate an arrest.  *Weigel*, 544 F.3d at 1151-52.  Additionally, in *Vondrak v. City of Las Cruces, supra*, the Tenth Circuit held that all law enforcement officers could be held liable for their inaction during a fellow officer's alleged constitutional violation.  *Vondrak*, 535 F.3d at 1210.

The *Weigel* and *Vondrak* decisions were both issued in 2008.  The three-part test for excessive force, and the duty of other officers to intervene, were both clearly established before Plaintiff's arrest in 2009.  Based only on the facts as alleged in the Complaint, Defendant Kuritz should have known that Plaintiff's constitutional right against excessive force would be violated by the willful and malicious application of a taser to Plaintiff's leg.  Plaintiff's Complaint asserts that Defendant Kuritz tasered and arrested Plaintiff without any provocation or justification.  These allegations assert violations of

14

clearly-established constitutional rights.  Further, Plaintiff's Complaint asserts that Defendants Roberts and Johnson failed to intervene when Defendant Kuritz used the taser. These allegations also assert violations of clearly-established constitutional rights.

With regard to Plaintiff's false arrest and false imprisonment claims, the Tenth Circuit equates the probable cause requirement in criminal cases to the probable cause required for a mental health arrest.  *Pino*, 75 F.3d at 1467-68.  Before police detain an allegedly mentally ill individual, police officers must determine that the individual appears mentally ill and is an imminent threat to himself or others pursuant to Colorado statute.  The *Pino* decision was issued in 1996 and the statute was last amended in 1998.  Plaintiff's allegations assert that Defendant Kuritz violated Plaintiff's clearly-established Constitutional rights.  At this stage of the proceedings, Defendants are not entitled to qualified immunity for any of the alleged constitutional violations.

## IV.  Conclusion

For the aforementioned reasons,

It is HEREBY **RECOMMENDED** that Defendants' **Motion to Dismiss** [#18] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed.R.Civ.P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 10, 2010

                                              BY THE COURT:
                                              s/ Kristen L. Mix
                                              U.S. Magistrate Judge