IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00062-ZLW-KLM

DAVID MAGRUDER,

    Plaintiff,

v.

ANDREW KURITZ,
JACOB ROBERTS,
ERIC JOHNSON,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment** [Docket No. 55; Filed August 11, 2010] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation. The Motion has been fully briefed and is ripe for resolution. The Court has considered the Motion, Plaintiff's Response [Docket No. 58], Defendants' Reply [Docket No. 61] and the applicable case law and is sufficiently advised in the premises. For the reasons set forth below, I **RECOMMEND** that the Motion be **GRANTED**.

**I. Standard of Review**

The purpose of a summary judgment motion is to assess whether trial is necessary. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

1

fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit pursuant to the governing substantive law. *Id.*

The movant must show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.

After the movant has met his initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Further, the nonmoving party's affidavit or evidence must be more than "mere reargument of a party's case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., *Federal Practice and Procedure*

§ 2738, at 356 (3d ed. 1998).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Fed. R. Civ. P. 56(e) allows a complaint to be treated as an affidavit if it is based on personal knowledge and has been sworn to under penalty of perjury.[1] That is not the case here. Plaintiff's Complaint is not verified. It is not the Court's function to search the complaint for evidence that rebuts Defendants' statement of undisputed facts. *Gross v. Burggraf Construction Co.,* 53 F.3d 1531, 1546 (10th Cir. 1995). Because Plaintiff did not submit his Complaint sworn under penalty of perjury, it cannot be considered as an affidavit for Rule 56 purposes. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997). Plaintiff's unverified complaint and his response to the motion for summary judgment are insufficient evidence under Rule 56. The lack of competent evidence in Plaintiff's response means that the Court must accept as true all material facts asserted in the summary judgment motion. *Reed v. Bennett*, 313 F.3d 1190, 1194 (10th Cir. 2002).

---

[1] Attached to Plaintiff's Response is apparently a report on the use of a taser, a portion of a police report, and some medical records. None of Plaintiff's exhibits contradict Defendants' Statement of Undisputed Material Facts or meet the standard for Rule 56(e) evidence. Plaintiff does not explain the materiality of these documents.

## II. Statement of Undisputed Material Facts

This case arises from alleged constitutional violations committed during Plaintiff's arrest by Deputies Kuritz, Roberts and Johnson of the Douglas County Sheriff's Office (the "Defendants"). Plaintiff, who is proceeding *pro se*, filed this case pursuant to 42 U.S.C. § 1983.

The incident underlying Plaintiff's claims began on the evening of March 30, 2009 when the Douglas County Sheriff's Office Dispatch Center received a 911 call from Deborah Magruder, Plaintiff's wife. [#55-7], Deposition of Deborah Magruder, Ex. 2 Transcript. Ms. Magruder stated that Plaintiff, her husband, first attempted suicide in his garage by sitting in his idling car, with the garage door closed. She had thwarted his initial suicide attempt by turning off his car and taking away his car keys. *Id.* at 4. However, Plaintiff then found his motorcycle keys and tried to kill himself again, in essentially the same way. *Id*. at 5. After Plaintiff's wife hindered his second attempt, Plaintiff left the house. *Id.*

Deputy Andrew Kuritz of the Douglas County Sheriff's Office was on patrol and responded to the dispatch call. The dispatcher provided the following information to Kuritz: Plaintiff attempted to kill himself in his garage but his wife took away the keys; Plaintiff was throwing things around in the house looking for the keys; he was on medication for anxiety and depression; and he had been to a mental hospital in the past, and vowed never to go back. [# 55-3], Affidavit of Andrew Kuritz ("Kuritz Aff."), ¶ 2. Deputy Kuritz was also given a physical description of Plaintiff and his clothing, and informed of his location. *Id.*

When Kuritz arrived in Plaintiff's neighborhood in a patrol car, he spotted a man matching the description given to him by dispatch. He exited his patrol car and addressed

4

Plaintiff by his first name. Plaintiff said to Kuritz "I don't know you," and began to walk away. *Id.* at ¶ 4. Kuritz followed Plaintiff down a footpath beside the road. Kuritz identified himself as a deputy sheriff. *Id.* Plaintiff asked Kuritz why he should believe him. Kuritz shined his flashlight on his badge to show Plaintiff that he was a police officer. *Id.*

Kuritz told Plaintiff that he was responding to a 911 call from his house. *Id.* Plaintiff was unresponsive and stared straight ahead. *Id.* at 5. Because of Plaintiff's reaction, Kuritz pulled his taser from its holster and said, "You're making me nervous." *Id.* In response, Plaintiff said, "*You're* the one who's making *me* nervous." Kuritz reholstered the taser. *Id.* at ¶ 6. Kuritz observed that Plaintiff's reactions were not overtly hostile or aggressive, but that he appeared abnormal. *Id.* Plaintiff's actions struck Kuritz as odd, even paranoid. *Id.* For example, despite having asked twice previously, Plaintiff asked Kuritz to identify himself for a third time. *Id.* Kuritz stated his name and pointed to his badge again. *Id.* at 7.

Plaintiff took a step toward Kuritz. Knowing that Plaintiff had a history of mental illness, and that he was acting strangely, Kuritz put his hand up and told Plaintiff to stop where he was, and to place his hands behind his back. *Id.* He refused. Kuritz explained that Plaintiff was going to be transferred to a hospital for a mental evaluation. *Id.* Kuritz again asked Plaintiff to place his hands behind his back. Plaintiff refused. *Id.*

By this time, Deputy Roberts arrived on the scene. Kuritz and Roberts attempted to force Plaintiff's hands behind his back to handcuff him. [#55-3], Affidavit of Jacob Roberts ("Roberts Aff.") at ¶ 4. Plaintiff tensed up so that the officers could not move his arm. Kuritz Aff. at ¶ 8. In the struggle, Kuritz ended up on the ground. *Id.* He got back up and he and Roberts pressed Plaintiff against a fence, trying to bring his hands behind his

5

back to handcuff him, again without success. *Id.* Kuritz and Roberts decided to take Plaintiff to the ground. *Id.* at ¶ 9; Roberts Aff. at ¶ 5. Deputy Roberts was able to pull Plaintiff's left hand behind his back, but Plaintiff tucked his right arm close to his shoulder and head and Kuritz could not move it. Kuritz Aff. at ¶ 9.

Kuritz removed the firing cartridge from his taser. *Id.* at ¶ 10. According to Kuritz, the taser in this mode does not fire barbs; it merely works like a cattle prod. *Id.* Kuritz applied the taser to Plaintiff's leg, but Plaintiff was able to pull his leg away. *Id.* Kuritz used the taser a second time. Plaintiff then complied with Kuritz's order. Kuritz transported Plaintiff to the hospital.

Plaintiff seeks compensatory and punitive damages for excessive force pursuant to 42 U.S.C. § 1983 and the Fourth Amendment.[2] *Complaint* [#1] at 6. First, Plaintiff asserts that Defendants Roberts and Kuritz used excessive force when they wrestled Plaintiff to the ground. Second, Plaintiff contends that Defendant Kuritz used excessive force when he tasered Plaintiff's leg twice. *Id.* at 4, 6. Third, Plaintiff contends that Defendants Roberts and Johnson are liable for excessive force because they did not protect Plaintiff when they witnessed Kuritz allegedly using excessive force. Finally, Plaintiff alleges that Defendant Kuritz committed both false arrest and false imprisonment by taking Plaintiff to the hospital after Defendants detained him.

### III. Analysis

**A. Excessive Force**

---

[2] The Complaint also alleges a claim for assault. *See Complaint* [#1] at 6. Despite Plaintiff's assertions, only Plaintiff's excessive force, false arrest and false imprisonment claims can be pursued pursuant to § 1983. Specifically, "§ 1983 does not impose liability for violations of duties of care arising out of state tort law." *Chestra v. Sedgwick County*, 08-3214, 2008 WL 5395982, at *2, (D. Kan. Dec. 23, 2008) (citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 201-03 (1989)).

6

Defendants Kuritz and Roberts assert that all claims against them should be dismissed because they did not use excessive force when they arrested Plaintiff. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Graham v. Conner*, 490 U.S. 386, 394-95 (1989). A court looks to the "totality of the circumstances" to determine whether the manner of arrest was reasonable. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In the Tenth Circuit, "[w]e analyze whether the force used to effectuate an arrest violates an individual's Fourth Amendment rights under the 'objective reasonableness' standard of the Fourth Amendment." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham*, 490 U.S. at 388). "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1287-88 (10th Cir. 2008) (quoting *Marquez*, 399 F.3d at 1220).

Because Defendant Roberts is only liable for excessive force if Defendant Kuritz used excessive force, *see Mick v. Brewer*, 76 F.3d 1127,1136 (10th Cir. 1996), the determinative factual inquiry is necessarily the alleged force employed by Defendant Kuritz. Accordingly, the relevant facts are that Defendant Kuritz recognized Plaintiff as the individual referred to in a 911 call regarding an attempted suicide. He was also aware that Plaintiff had attempted suicide before, was on medication for anxiety and depression, and vowed to not be taken back to the hospital. Further, Plaintiff appeared disoriented and in a confused state. He asked Kuritz three times to identify himself. Kuritz told Plaintiff he was going to receive a mental evaluation at a hospital. When Kuritz ordered Plaintiff to put

his hands behind his back, he refused to do so. Defendant Deputy Roberts arrived on the scene and assisted Kuritz. Plaintiff was resistant and the officers could not get him handcuffed. After they were unable to handcuff him, the deputies took Plaintiff to the ground and lay on top of him. While Plaintiff was in their control, Defendant Kuritz twice tasered him in the leg after removing the firing cartridge.[3]

To determine if Defendant Kuritz used reasonable force the Court must consider whether his actions were objectively reasonable. *See Scott v. Harris*, 550 U.S. 372, 381 (2007). "Reasonableness is evaluated under a totality of the circumstances approach which requires that [the Court] consider the following factors: '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (citation omitted). The Court should also consider whether the officer's own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001). The core inquiry is "whether force was applied in a good-faith attempt to maintain or restore discipline, or maliciously and sadistically to cause harm." *Serna v. Colo. Dep't of Corrs.*, 455 F3d 1146, 1152 (10th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Plaintiff submits that Defendant Kuritz's use of the taser was excessive force. The use of a taser is not per se unconstitutional. *Hunter v. Young*, 238 Fed. Appx. 336, 369 (10th Cir. 2007). The "use of a taser is only one fact to be considered in the overall

---

[3] Defendants have not stated the significance of this fact, but the Court assumes that this method renders the taser less painful.

'reasonableness' determination." *Asten v. City of Boulder,* 652 F.Supp.2d 1188, 1205 (D. Colo. 2009). The use of a taser does not categorically amount to excessive force. *Id.* In cases such as this, when the Plaintiff is suicidal or mentally ill, and is resistant to arrest, the use of a stun gun may not be considered excessive force. *Adams v. Mustang Police Dep't*, No. CIV-07-1113-D, 2009 WL 152580, at *10-11 (W.D. Okla. Jan. 21, 2009). The fact that Plaintiff was resisting arrest is relevant in determinating whether employment of the taser was reasonable. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that single use of taser against a hostile and uncooperative arrestee not excessive force); *Francis v. Pike County*, 708 F.Supp. 170, 171-72 (S.D. Ohio 1988)(use of stun gun to restrain individual who resisted being handcuffed did not constitute excessive force).

I find that there is genuine issue of material fact as to whether the amount of force employed by Defendant Kuritz was reasonable under the circumstances. Plaintiff had not committed a crime. He had not been violent with Kuritz. Plaintiff was unarmed and suicidal. Although he resisted being handcuffed, both officers were laying on top of him when he was tasered. Kuritz twice used the taser on Plaintiff's leg, until he complied. Given these circumstances, a reasonable jury could conclude that Kuritz's use of the taser was excessive force, and thus Defendants are not entitled to summary judgment on this claim.

Defendant Roberts did not use a taser on Plaintiff, but he did participate in the arrest. He assisted Kuritz in getting Plaintiff on the ground by lying down on him. However, regardless of Defendant Roberts' actual physical involvement, he may still be liable for a claim of excessive force. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). Whether an officer had a chance to intervene "is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id*. Because I have concluded that there is a genuine factual issue as to whether Kuritz used excessive force on Plaintiff, the level of Roberts's involvement in the alleged excessive force is also a matter for a jury.

### B. Defendant Johnson

Defendant Johnson contends that Plaintiff's claim against him should be dismissed because Plaintiff fails to show that Johnson personally participated in any of the alleged constitutional violations. The sole allegation in the case against Johnson consists of the following: "three Officers on seen [sic] as Eric Johnson had arrived by that time, according to Johnson's police report." *Complaint* at 4. In his deposition, Plaintiff said that he believed that Johnson was never actually at the scene and that his presence was falsified. [#55-6], Deposition of Plaintiff, at 79-81.

Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the Defendants' participation, control or direction. *United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir. 1994); *Whitelow v. Stanley*, No. 06-cv-02256, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007) (unpublished decision). Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, "to state a claim in federal court, a complaint must explain what each

defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff has not provided any evidence that Defendant Johnson personally participated in the alleged constitutional violation, and therefore there is no material factual dispute on this issue. Therefore, judgment should be entered in favor of Johnson on Plaintiff's excessive force claim.

### C. False Arrest and False Imprisonment

Plaintiff claims that Defendant Kuritz violated his Fourth Amendment right against unreasonable search and seizure by arresting Plaintiff and placing him in the Littleton Adventist Hospital against his will. Defendant Kuritz asserts that no constitutional violation occurred.

Plaintiff's false arrest and false imprisonment claims alleged pursuant to § 1983 are considered jointly because they invoke the same Fourth Amendment right to be free from unreasonable searches and seizures.[4] That is, "[s]ection 1983 provides a federal civil cause of action against state officials for the 'deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Titus v. Ahlm*, 297 Fed. Appx. 796, 799 (10th Cir. Oct. 28, 2008) (citing 42 U.S.C. § 1983) (unpublished decision). "While constitutional claims for wrongful arrest, [and imprisonment,] . . . under § 1983 are analyzed in light of

---

[4] If Plaintiff had been imprisoned pursuant to legal, but wrongful process, he would have a claim pursuant to the procedural component of the Fourteenth Amendment Due Process Clause analogous to a tort claim for malicious prosecution. However, Plaintiff does not allege any facts that would constitute a malicious prosecution claim. Therefore, both of his claims for false arrest and false imprisonment are properly considered pursuant to the Fourth Amendment. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (articulating the differences between Fourth and Fourteenth Amendment claims for statute of limitation purposes).

analogous torts, such as false arrest . . . the ultimate and indispensable element of such a claim is the deprivation of a constitutional right." *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006). "To constitute a seizure of the person, just as to constitute an arrest - the quintessential 'seizure of the person' under Fourth Amendment jurisprudence - there must be *either* the application of physical force, however slight, *or*, where that is absent, submission to an officer's 'show of authority' to restrain the subject's liberty." *California v. Hodari D.*, 499 U.S. 621, 624 (1996). Importantly, "§ 1983 suits ultimately rest on the Constitution, not on state (or federal) common law." *Mondragon*, 519 F.3d at 1082.

"The Fourth Amendment is not limited to criminal cases, but applies whenever the government takes a person into custody against [his] will." *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996). For purposes of an alleged constitutional violation, "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 576 (1975). For arrests based on mental health issues, as "[i]n the criminal arrest context, a Fourth Amendment seizure is reasonable [only] if it is based on probable cause." *Pino*, 75 F.3d at 1467-68. Further, Colo. Rev. Stat. § 27-10-105(1)(a)(I) provides, in relative part, that:

> When any person appears to have a mental illness and, as a result of such mental illness, appears to be an imminent danger to others or to himself or herself or appears to be gravely disabled, then a [police officer], upon probable cause and with such assistance as may be required, may take the person into custody, or cause the person to be taken into custody, and placed in a facility . . . .

The statute explicitly requires that a person appear to be mentally ill and a threat to himself

or others, before he may be "taken into custody."[5] At the time Defendants arrested Plaintiff, Kuritz and Roberts knew that Plaintiff had a history of mental illness. He was being treated for depression and anxiety. According to Plaintiff's wife, he tried to commit suicide twice. When he was approached by Kuritz, Plaintiff was evasive, uncooperative, and made paranoid statements. Kuritz found Plaintiff's words nonsensical, and he appeared confused. Plaintiff also strongly and repeatedly resisted arrest. Kuritz Aff. ¶¶ at 6-8.

Given these circumstances, there was probable cause to take Plaintiff into custody, and no reasonable jury could conclude otherwise. Accordingly, summary judgment should enter in favor of Defendants on Plaintiff's claim for violation of his Fourth Amendment right against false imprisonment and false arrest.

**D. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"[B]ecause qualified immunity is 'designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently" from other motions for summary judgment. *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008)

---

[5] In cases involving arrests based on mental health, the Court applies the "probable cause" standard and the applicable provisions of a state mental health statute. *Pino*, 75 F3d at 1468.

(internal citations omitted). When a defendant asserts a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation," *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Secondly, the Court must consider whether Plaintiff has established that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 815-16 (2009).[6]

In order for Plaintiff's claim "to survive summary judgment, the record must contain facts that rebut the presumption of [Defendant's] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (finding for plaintiff on summary judgment motion on qualified immunity where plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F.Supp. 2d 1183,1203 n.7 (D. N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome defendant's motion for summary judgment on basis of qualified immunity, "plaintiff must do more than rest on his own speculation or pleadings"); *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were

---

[6]It is no longer mandatory that the Court first consider whether Plaintiff has established a constitutional violation; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established. *Pearson*, 129 S. Ct. at 818.

violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

Plaintiff bears the burden of proving that Defendant's actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."). "'[T]he right the official is alleged to have violated must have been "clearly established" in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.'" *Id.* at 202 (citation omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct. . . . If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. After all, "qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). In order for a constitutional right to be

15

clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other Circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be caselaw in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

Excessive force claims are governed by the Fourth Amendment; uses of force that are not objectively reasonable are unconstitutional. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The relevant dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey v. City of Federal Heights,* 509 F.3d 1278, 1283-84 (10th Cir. 2007). The *Graham* decision was enough to constitute clearly established law in an excessive force case. *Mick v. Brewer*, 76 F.3d 1127, 1135 (10th Cir. 1996). But *Graham*'s reasonableness test ". . . is not enough to turn *all* uses of excessive force into violations of clearly established law." *Casey*, 509 F.3d at 1284 (quoting *Saucier*, 533 U.S. at 201-02). "In other words, the fact that it is clear that any unreasonable use of force is unconstitutional does not mean it is always clear *which* uses of force are unreasonable." *Id.*

The determination of excessive force "depends heavily on the facts presented in a specific case and whether, in light of the totality of those facts, the amount and nature of the applied force was reasonable." *Asten v. City of Boulder*, 652 F.Supp.2d 1188, 1205 (D. Colo. 2009). Given this test, it is unlikely that the Court will find a previous decision presenting the exact same factual circumstances. The Court cannot grant immunity whenever there is a new fact pattern involving alleged excessive force. *Casey*, 509 F.3d at 1284. Instead, the Court should look to general principles regarding what was clearly

16

established. *See Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006). Finally, the Tenth Circuit has adopted a "sliding scale" to determine whether the law was clearly established. "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

As noted above, it is Plaintiff's burden to show that Defendants violated clearly established law. Plaintiff has not cited any clearly established law that Defendants' conduct here was unconstitutional. However, the Court has examined the caselaw prior to March 30, 2009, the date of the incident, in order to determine whether Defendants violated "clearly established law." The law regarding whether use of a taser to subdue an individual in these circumstances constitutes excessive force is not clearly established. *See Casey*, 509 F3d 1278, 1286 (10th Cir. 2007) (use of taser by officer as soon as arriving at scene of struggle between officer and misdemeanor suspect was excessive force); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (use of stun gun to restrain individual who resisted being handcuffed did *not* constitute excessive force); *Sawyer v. Green*, 316 F.3d Appx. 715, 717 (10th Cir. 2008) (pressing taser in detainee's back in a confined area was *not* excessive force); *Hunter v. Young*, 238 Fed. Appx. 336, 339 (10th Cir. 2007) (officer's use of taser gun against detainee for not following order was *not* excessive force); *Wilson v. City of Lafayette*, No. 07-02248-PAB-BNB, 2020 WL 1380253, at * 7 (D. Colo. Mar. 31, 2010) (unpublished decision) (there is no authority for the "proposition that a single TASER discharge" is excessive when Plaintiff resisted arrest and ignored police orders); *Smith v. City and County of Denver*, No. 07-cv-00154-WDM-BNB, 2008 WL 724629, at * 7 (D. Colo. Mar. 18, 2008) (unpublished decision)(it is clearly established in the Tenth Circuit that use

of taser on unconscious suspect was excessive force).

In sum, there is no clearly established law that put Defendants on notice that their actions in these circumstances were unconstitutional. Instead, the law is only clearly established in certain limited circumstances; for example, use of a taser on an unconscious suspect. Moreover, Plaintiff has not sustained his burden of showing otherwise. Accordingly, because the "clearly established" prong of the qualified immunity test cannot be met, Defendants' conduct here is protected.

## IV. Conclusion

For the aforementioned reasons,

IT IS HEREBY **RECOMMENDED** that Defendants' **Motion for Summary Judgment** [#55] be **GRANTED** on the basis of qualified immunity as to the excessive force claim and on the false imprisonment and false arrest claims.

IT IS FURTHER **ORDERED** that pursuant to Fed.R.Civ.P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 20, 2010

                                                        BY THE COURT:

                                                       s/ Kristen L. Mix
                                                       U.S. Magistrate Judge